IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SHANITA J. JAMES,                        )
                                         )
            Plaintiff,                   )
                                         )
v.                                       )   CIVIL ACTION NO. 24-0459-MU
                                         )
FRANK J. BISIGNANO,                      )
Commissioner of Social Security,[1]      )
                                         )
            Defendant.                   )

## MEMORANDUM OPINION AND ORDER

Plaintiff Shanita J. James brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her claim for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 5 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed. R. Civ. P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, … order the entry of a final judgment, and conduct all post-judgment proceedings.")). *See also* Doc. 6. Upon consideration of the administrative record, James's brief, the

---

[1] Frank J. Bisignano became the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Frank J. Bisignano is substituted in lieu of Leland Dudek as the defendant in this action.

Commissioner's brief, and oral argument, the Court concludes that the Commissioner's decision denying benefits should be affirmed.[2]

## I. PROCEDURAL HISTORY

James filed an application for a period of disability and DIB, under Title II of the Act, 42 U.S.C. §§ 423-425, on October 18, 2022, alleging disability beginning on September 1, 2022. (PageID. 257-63). Her application was denied at the initial level of administrative review on November 28, 2022. (PageID. 85-93). She filed a Request for Reconsideration on December 15, 2022, that was denied on October 23, 2023. (PageID. 114, 93-103). On November 22, 2023, James requested a hearing by an Administrative Law Judge (ALJ). (PageID. 119-20). After a hearing was held on August 5, 2024, the ALJ issued an unfavorable decision finding that James was not under a disability from the date of onset, September 1, 2022, through the date of the decision, September 18, 2024. (PageID. 59-84; 42-58). James appealed the ALJ's decision to the Appeals Council, and, on November 14, 2024, the Appeals Council denied her request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. (PageID. 23-27).

After exhausting her administrative remedies, James sought judicial review in this Court, pursuant to 42 U.S.C. §§ 405(g) and 1383(c). (Doc. 1). The Commissioner filed the social security transcript on February 6, 2025. (Doc. 8). Both parties filed briefs

---

[2] Any appeal taken from this Order and Judgment shall be made to the Eleventh Circuit Court of Appeals. *See* Docs. 5,6 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for the judicial circuit in the same manner as an appeal from any other judgment of this district court.").

setting forth their respective positions (Docs. 9, 12) and oral argument was heard on May 6, 2025. (Doc. 14).

## II. CLAIM ON APPEAL

James alleges that the ALJ's reliance on the vocational expert's testimony that she could perform certain jobs was in error because there was a conflict between the DOT description of those jobs and the ALJ's residual functional capacity ("RFC") determination that was not resolved by the ALJ. (PageID. 673).

## III. BACKGROUND FACTS

James, who was born on October 27, 1978, was 43 years old on the alleged onset date of her disability. (PageID. 257). James initially alleged disability due to sleep apnea, reoccurring UTIs incognizances, female sexual arousals disorder, PTSD, right shoulder strain,  carpel tunnel syndrome, heart palpitations, left ankle lateral ligament sprain, left breast scare, left and right elbow lateral epicondylitis, left knee joint arthritis, left and right hip strain, left wrist strain, lumbosacral sprain, migraines, plantar fasciitis, right ankle deltoid ligament sprain, pelvic pain, temporomandibular joint disorder, tinnitus, and hypertension. (PageID. 318). At the hearing before the ALJ on August 5, 2024, James testified that the conditions that prevent her from working are chronic migraines, lower back problems, knee problems, and PTSD. (PageID. 65). James completed three years of college at Central Texas College in May of 2017 and worked as a 1st sergeant in the Army in the 15 years before being unable to work. (PageID. 63, 320). In her Function Report, which she completed on November 9, 2022, she stated that the conditions that limit her ability to work are lower back pain, migraines, PTSD, and sleep apnea. (PageID. 333). She further stated in the report that she takes care of

3

her personal needs, she can drive a car, she cooks meals and does laundry two to three times per week, and she does other light housekeeping. (PageID. 334-36). She can go out alone, grocery shops two to three times per month, goes to church on Sunday, and socializes with family and friends in person, by phone, by text, and virtually. (PageID. 337). She can pay bills, count change, handle a savings account, and use a checkbook and money orders. (PageID. 336). She stated that she cannot lift anything over 20 pounds, she has pain in her back and/or knees when she sits without back support, squats, bends, and stands longer than 30 minutes, and she has trouble completing tasks and concentrating because she gets distracted easily. (PageID. 338).

## IV. ALJ'S DECISION

After conducting a hearing on this matter, the ALJ determined that James had not been under a disability from the alleged onset date though the date of the decision, September 18, 2024, and thus, was not entitled to benefits. (PageID. 42-58). At step one of the five-step sequential evaluation, the ALJ found that James had not engaged in substantial gainful activity since September 1, 2022, the alleged onset date. (PageID. 44). Therefore, she proceeded to an evaluation of steps two and three. The ALJ found that James had severe impairments of degenerative joint disease, degenerative disc disease, migraine headache disorder, hypertension, obesity, depressive disorder, anxiety disorder, and trauma disorder, but that she did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (PageID. 44-46). After considering the entire record, the ALJ concluded at step four that James had the residual functional capacity ("RFC") to perform light work, except that she can occasionally climb ramps and stairs; cannot climb ladders, ropes, or

4

scaffolds; can frequently balance; can occasionally stoop, kneel, crouch, and crawl; needs to avoid concentrated exposure to extreme cold, extreme heat, humidity, and noise; should have her own workstation and a repetitive predictable work routine that does not involve working in close coordination with others; needs to avoid work requiring quick decision-making, rapid changes, and multiple demands; and can tolerate occasional interaction with supervisors and coworkers but should not perform tasks requiring direct interaction with the public. (PageID. 46-51). After setting forth her RFC, the ALJ determined that James is unable to perform any past relevant work. (PageID. 51). However, considering her age, education, work experience, and RFC, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that James can perform, and therefore, found that James was not disabled within the meaning of the Act during the relevant time period. (PageID. 52-53).

## V. <u>STANDARD OF REVIEW</u>

Eligibility for DIB requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E). "For DIB claims, a claimant is eligible for benefits where [he] demonstrates disability on or before the [date last insured]." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). A claimant is disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A). The impairment must be severe, making the claimant unable to do the claimant's previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-11. "Substantial

gainful activity means work that . . . [i]nvolves doing significant and productive physical or mental duties [that] [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

In evaluating whether a claimant is disabled, the ALJ utilizes a five-step sequential evaluation:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairment in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Comm'r of Soc. Sec.,* 457 F. App'x 868, 870 (11th Cir. 2012) (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)(f); *Phillips v. Barnhart,* 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden of proving the first four steps, and if the claimant does so, the burden shifts to the Commissioner to prove the fifth step. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The steps are to be followed in order, and if it is determined that the claimant is disabled at a step of the evaluation process, the evaluation does not proceed to the next step.

If the claimant appeals an unfavorable ALJ decision, the reviewing court must determine whether the Commissioner's decision to deny benefits was "supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted); *see* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel*, 631 F.3d at 1178 (citations omitted). "In determining whether substantial evidence exists,

[the reviewing court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Id*. When a decision is supported by substantial evidence, the reviewing court must affirm "[e]ven if [the court] find[s] that the evidence preponderates against the Secretary's decision." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

## VI. <u>DISCUSSION</u>

James argues that remand or reversal is warranted here based on her assertion that substantial evidence does not support the ALJ's conclusion because the ALJ did not resolve an apparent conflict between the DOT description of the jobs that the VE opined she could perform and the ALJ's RFC determination. (Doc. 9). The Commissioner disagrees. (Doc. 12).

After reviewing all the evidence and testimony, the ALJ determined James's RFC, as set forth above, and concluded that she was unable to perform her past work. (PageID. 46-51). Because the ALJ found that James could not perform the full range of light work, but instead had some additional limitations, the ALJ turned to a VE "[t]o determine the extent to which these limitations erode the unskilled light occupational base...." (PageID. 52). After listening to James's testimony and being presented with a hypothetical question from the ALJ describing the limitations, the VE opined that James "would be able to perform the requirements of representative occupations such as mail clerk, non-postal, ... office helper, ... and as a shipping and receiving clerk." (PageID. 52). Specifically, the VE testified:

Q. Okay. So let me ask you to consider a hypothetical individual of the Claimant's age, education and work experience, who is limited to light activity. That individual could occasionally climb ramps and stairs, but would be unable to climb ladders, ropes, or scaffolds. They could frequently balance and no more than occasionally stoop, kneel, crouch, and crawl. They would need to avoid concentrated exposure to extreme cold, extreme heat, humidity, and noise. And they could perform work that would allow them to work in their own workstation, in a repetitive, predictable work routine, that would not involve working in close coordination with others. They would need to avoid work that would require quick decision-making, rapid changes, and multiple demands. And they would be limited to occasional interaction with supervisors and coworkers, with no direct interaction with the public. Could such an individual perform that past work?

A. No, ma'am.

Q. Are there any jobs such an individual could perform?

A. Yes, with those limitations, there would be a range of light, unskilled, entry-level work, with an SVP of 2, and so an individual so described could do work as a mail clerk in a non-postal capacity. The DOT code is 209.687-026. There's 12,000 of those jobs in the national economy. They could do work as an office helper. The [DOT] code is 239.567-010. There's 13,000 of those jobs. Finally, work as a shipping and receiving clerk. The [DOT] code is 222.387-074; 12,600 jobs. And that's a representative sample.

Q. Is that consistent with the <u>Dictionary of Occupational Titles</u> and its companion publications?

A. Yes, it is.

(PageID. 80-81).

Social Security Ruling (SSR) 00-4p, 2000 WL 1898704 (Dec. 4, 2000), "imposes a duty on ALJs to identify and resolve apparent conflicts between DOT data and VE testimony, and this duty is not fulfilled simply by taking the VE at his word that his testimony comports with the DOT when the record reveals an apparent conflict between the VE's testimony and the DOT."[3] *Washington v. Comm'r of Soc. Sec.,* 906 F.3d 1353,

---

[3] Although this Court is not bound by a Social Security ruling, courts in the Eleventh Circuit do afford it deference. *See Fair v. Shalala,* 37 F.3d 1466, 1468-69 (11th Cir. 1994). The Court also notes that the SSA is bound to follow it. *Buckwalter v. Acting Comm'r of Soc. Sec.,* 5 F.4th 1315, 1321 (11th Cir. 2021).

8

1362 (11th Cir. 2018). "[T]he ALJ has an affirmative obligation to identify any 'apparent' conflict and to resolve it, [and] [t]he failure to properly discharge this duty means the ALJ's decision is not supported by substantial evidence." *Id.* "Specifically, the ALJ must (1) identify any 'apparent' conflicts, regardless of whether that conflict is brought to the ALJ's attention by the parties or the VE; (2) explain any discrepancy between the VE's testimony and the DOT; and (3) detail in the decision how that discrepancy was resolved." *Buckwalter v. Acting Comm'r of Soc. Sec.,* 5 F.4th 1315, 1321 (11th Cir. 2021) (citing *Washington*, 906 F.3d at 1362). "An 'apparent conflict' is 'a conflict that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony.'" *Ragusa v. Comm'r of Soc. Sec.*, No. 22-11935, 2023 WL 6319307, at *3 (11th Cir. Sept. 28, 2023) (quoting *Washington*, 906 F.3d at 1365).

The Court has reviewed James's arguments and finds no "apparent" conflicts. First, James points to language in the DOT description of the mail clerk position which sets forth a temperament factor of "Attaining precise limits, TOLERANCES, and standards." DOT 209.687-026, 1991 WL 671813 (Jan. 1, 2016). James does not offer any explanation of what such language requires of a worker, nor does she explain how the language creates a conflict with her RFC. The Court's own research shows that this description has been interpreted by some courts as "barring fast-paced or production-quota work." *Ryan Patrick A. v. Berryhill,* Case No. EDCV 17-2526-JPR, 2019 WL 1383800, at *6 (C.D. Cal. Mar. 27, 2019) (citing *Sandra H. v. Comm'r of Soc. Sec.*, No. 2:17-CV-403-FVS, 2019 WL 289811, at *7 (E.D. Wash. Jan. 22, 2019)). Nothing in James's RFC bars her from fast-paced or production-quota work; therefore, the Court finds no apparent conflict that needed to be resolved by the ALJ with regard to the mail

clerk position. Thus, no error was committed. *See Ragusa*, 2023 WL 6319307, at *4 (holding that the ALJ did not err by relying on the VE's testimony when the claimant points to a DOT description that does not conflict with the ALJ's RFC assessment).

Next, James submits that the office helper job includes "work situations that involve frequent changes of tasks using different techniques, procedures, or degrees of attentiveness without loss of efficiency or composure" and requires "talking with or signaling people to convey or exchange information" and "giving assignments and/or directions to helpers or assistants." (Doc. 9, PageID. 900). She also asserts that the job as a shipping and receiving clerk includes: "work situations that involve adhering to and achieving exact levels of performance, using precision measuring instruments, tools, and machines to attain precise dimensions. Preparing exact verbal and numerical records. Complying with precise instruments and specifications for materials, methods, procedures, and techniques to attain specified standards." (*Id.*). Notably, James did not include citations to the quoted material and the DOT's descriptions of the jobs of office helper and shipping and receiving clerk do not include the quoted material. *See* DOT, § 239.567-010, 1991 WL 672232 (office helper) and DOT, § 222.387-074, 1991 WL 672108 (shipping and receiving clerk). At oral argument, counsel for James indicated that these descriptions came from SkillTRAN; however, products from SkillTRAN, a private software company, are not part of the DOT, and neither SSR 00-4p or Eleventh Circuit case law requires the ALJ to resolve any apparent conflict between SkillTRAN descriptions and the claimant's RFC. Moreover, James does not point to any specific limitation in her RFC that was in apparent conflict with these job descriptions in the DOT; and therefore, the Court finds no apparent conflict that needed to be resolved by

the ALJ with regard to either of these jobs. Thus, no error was committed. *See Ragusa*, 2023 WL 6319307, at *4

Because there was no apparent conflict between the DOT and James's RFC for the ALJ to resolve, the Court concludes that the ALJ's decision is supported by substantial evidence.

## CONCLUSION

It is well-established that it is not this Court's place to reweigh the evidence or substitute its judgment for that of the Commissioner. *See Chester*, 792 F.2d at 131. This Court is limited to a determination of whether the ALJ's decision is supported by substantial evidence and based on proper legal standards. Having reviewed the entire transcript, including the ALJ's decision, and considered the arguments made by James, the Court finds that the ALJ's determination that James was not disabled is supported by substantial evidence and based on proper legal standards.

Based on the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff benefits be **AFFIRMED**.

**DONE** and **ORDERED** this the **25th** day of **March, 2026**.

s/P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**

11